**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JOSE ACEVEDO,**

        **Plaintiff,**

**v.**                                                         **Case No: 6:20-cv-448-LRH**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendant.**

---

# MEMORANDUM OF DECISION[1]

Jose Acevedo ("Claimant") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for supplemental security income ("SSI"). Doc. No. 1.  Claimant raises two arguments challenging the Commissioner's final decision, and, based on those arguments, requests that the matter be reversed and remanded for further administrative proceedings.  Doc. No. 20, at 9, 20, 32.  The Commissioner asserts that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and that the final decision of the Commissioner should be affirmed.  *Id.* at 33.  For the reasons stated herein, the Commissioner's final decision is **AFFIRMED**.

---

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.  *See* Doc. Nos. 14, 18–19.

**I.     PROCEDURAL HISTORY.**

On September 20, 2016, Claimant filed an application for SSI, alleging a disability onset date of September 1, 1996. R. 15, 180.[2] Claimant later amended his disability onset date to September 20, 2016. R. 189. Claimant's application was denied initially and on reconsideration, and he requested a hearing before an ALJ. R. 102–06, 107–12, 113–15. A hearing was held before the ALJ on December 4, 2018, at which Claimant was represented by an attorney. R. 27–74. Claimant and a vocational expert ("VE") testified at the hearing. *Id.*

After the hearing, the ALJ issued an unfavorable decision finding that Claimant was not disabled. R. 15–22. Claimant sought review of the ALJ's decision by the Appeals Council. R. 177–79, 259–65. On January 10, 2020, the Appeals Council denied the request for review. R. 1–6. Claimant now seeks review of the final decision of the Commissioner by this Court. Doc. No. 1.

**II.    THE ALJ'S DECISION.[3]**

After careful consideration of the entire record, the ALJ performed the five-step evaluation process as set forth in 20 C.F.R. § 416.920(a). R. 15–22.[4] The ALJ found that Claimant had not

---

[2] The "Application Summary for Supplemental Security Income" states that Claimant applied for SSI on October 31, 2016, but according to the ALJ's decision, Claimant filed the application for SSI on September 20, 2016. *Compare* R. 15, *with* R. 180. For consistency, and because the application date is not dispositive of this appeal, the Court utilizes the application date stated by the ALJ: September 20, 2016.

[3] Upon a review of the record, I find that counsel for the parties have adequately stated the pertinent facts of record in the Joint Memorandum. Doc. No. 20. Accordingly, I adopt those facts included in the body of the Joint Memorandum by reference without restating them in entirety herein.

[4] An individual claiming Social Security disability benefits must prove that he or she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). "The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ('RFC') assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant

engaged in substantial gainful activity since September 20, 2016, the application date. R. 17. The ALJ further concluded that Claimant suffered from the following severe impairments: lumbar degenerative disc disease and radiculopathy (DDD); cervicalgia with radiculopathy; and thoracalgia. *Id.* The ALJ concluded that Claimant did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

Based on a review of the record, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in the Social Security regulations,[5] except:

> [T]he claimant can perform simple, routine, and repetitive tasks. The claimant can occasionally stoop, kneel, crouch, or crawl and can occasionally climb ramps or stairs, but can never climb ladders, ropes, or scaffolds. The claimant should avoid exposure to hazards, such as heights or machinery with moving parts. The claimant can frequently handle and finger with the upper extremities. The claimant cannot perform production rate pace work. The claimant can tolerate occasional changes in routine work place setting. Finally, the claimant is likely to be absent from work on an unscheduled basis one day per month.

R. 18.

After considering the record evidence, Claimant's RFC, and the testimony of the VE, the ALJ found that Claimant was unable to perform any past relevant work, which included work as a bouncer or truck driver light. R. 20. However, considering Claimant's age, education, work

---

numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(i)–(v), 416.920(a)(i)–(v)).

[5] The social security regulations define sedentary work to include:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).

experience, and RFC, as well as the testimony of the VE, the ALJ concluded that there were jobs existing in significant numbers in the national economy that Claimant could perform, representative occupations including call out operator, escort vehicle driver, and addressor.  R. 21–22; *see also* R. 69–70.  Accordingly, the ALJ concluded that Claimant was not disabled from the September 20, 2016 application date through the date of the decision.  R. 22.

**III.    STANDARD OF REVIEW.**

Because Claimant has exhausted his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).  The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV.  ANALYSIS.

In the Joint Memorandum, which I have reviewed, Claimant raises two assignments of error: (1) the ALJ erred in his consideration of Claimant's subjective complaints of pain and other symptoms; and (2) the ALJ erred in relying on the testimony of the VE because there is an unresolved conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). Doc. No. 20.  Accordingly, these are the only issues that I address.

### A.  Claimant's Subjective Complaints of Pain.

A claimant may establish disability through his or her own testimony of pain or other subjective symptoms. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  A claimant seeking to establish disability through his or her own testimony must show:

> (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).  "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561–62.  The Court will not disturb a clearly articulated credibility finding that is supported by substantial evidence.  *Id*. at 1562.

If the ALJ determines that the claimant has a medically determinable impairment that could reasonably produce the claimant's alleged pain or other symptoms, the ALJ must then evaluate the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work. 20 C.F.R. § 416.929(c)(1).  In doing so, the ALJ considers a variety of evidence, including, but not limited to, the claimant's history, the medical signs and laboratory findings, the claimant's statements, medical source opinions, and other evidence of how the pain affects the claimant's daily activities and ability to work.  *Id*. § 416.929(c)(1)–(3).  Factors relevant to the ALJ's consideration

regarding a claimant's allegations of pain include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication, the claimant receives for pain; (6) measures used for pain relief; and (7) other factors pertaining to functional limitations and restrictions to pain. *Id.* § 416.929(c)(3)(i)–(vii).

Here, in the decision, the ALJ states as follows as it relates to the RFC determination and Claimant's subjective complaints:

> The claimant is a 44-year-old man who asserts that he is unable to work due to his various impairments. The claimant asserts that he experiences radiating low back pain, which limits his ability to perform postural activities and trouble standing, walking and sitting for long periods. The claimant also asserted that he has depression and anxiety due to his physical impairments. The claimant asserted that treatment, including physical therapy was unsuccessful and that medication causes side effects including drowsiness, loss of concentration and loss of appetite (Ex. 3E; Hearing Testimony).
>
> Despite these allegations of symptoms and limitations, the record indicates that the claimant is able to take care of his personal needs as well as perform activities of daily living including preparing simple meals and washing dishes. He has a valid license and is able to drive. He is able to care for his children and can shop for groceries. The claimant also asserted that he uses a cane for his sciatic pain, but that it was not prescribed. He also asserted that he is not receiving treatment for his mental health (Hearing Testimony).
>
> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> Turning to the medical evidence, the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations. More specifically, the medical findings do not support the existence of limitations greater than the above listed residual functional capacity.
>
> Records indicate that the claimant sought treatment for low back pain. In August 2016, magnetic resonance imaging (MRI) revealed abnormalities throughout the lumbar spine including: left paracentral broad-based disc herniation with nerve root impingement; left lateral recess stenosis and spinal stenosis; posterior

spondylolisthesis; right lateral recess stenosis; and disc bulge (Ex. 1F). Orthopedic treatment records observed that the claimant demonstrated limited range of motion in the lumbar spine with pain and an antalgic gait. However, motor strength in the lower extremities was normal and straight leg-raising tests were negative bilaterally. As treatment, the claimant was advised to undergo pain management, was prescribed medication and surgery was recommended. The claimant testified that he has not undergone surgery to treat his symptoms (Ex. 4F; Hearing Testimony). In October 2017, an MRI of the thoracic spine showed broad based posterior disc herniations and associated radial tears at T7-8, T8-9 and T10-11 and neural encroachment at T7-8, T8-9 and T10-11 (Ex. 6F/33-34). In August 2018, an MRI of the cervical spine showed congenital narrowing of the spinal canal, disc bulging at C3-4, CS-6 and C6-7 and radial tears involving the CS-6 and C6-7 discs. Imaging also showed disc bulge and superimposed left-sided posterior disc herniation and associated radial tear at C4-5 and cord compression at C4-5 and CS-6 (Ex. 6F/2). By October 2018, treatment notes indicated that the claimant had pain with range of motion throughout the spine but gait and station were normal and muscles were normal. Additionally, his neurological and psychological examinations were normal (Ex. 8F/2).

The record also indicates that the claimant sought treatment for alleged numbness, tingling, weakness and burning sensations in his hands (Exs. 7F/7; 9F/12). Electrodiagnostic testing showed no evidence of neuropathy and only mild left carpal tunnel syndrome. Studies also showed evidence of severe left greater than the right radiculopathies in the lumbar and cervical spine (Ex. 9F/7).

In February 2017, consultative examiner, James Shoemaker, D.O., observed that the claimant demonstrated muscle tightness and tenderness in the lumbar spine and a positive left lower extremity straight leg-raising test. The claimant had a slow gait with a mild limp without the use of an assistive device and diminished muscle strength of the left foot. However, upper extremities revealed full range of motion, full grip strength and intact fine manipulation. Dr. Shoemaker further reported that x-ray imaging showed moderate to severe disc space narrowing and moderate to large osteophytes of L4-5 and LS-S1. There was also multilevel disc space narrowing and osteophytes which was mild L1-L4 (Ex. 5F).

Further examination of the evidence provided shows that the claimant's allegations are not fully persuasive. While I find the claimant's allegations to be genuine, the limiting effects of the symptoms are not substantiated by the objective medical evidence. Additionally, the claimant's activities of daily living suggest that his limitations are not as significant as purported, as discussed above. Finally, no treating or examining medical source has offered an opinion that the claimant is unable to work or an assessment of what activities the claimant can still perform supporting such a conclusion. Thus, I find that due to the claimant's spine impairments, he is limited to sedentary work. Due to his upper extremity pain, he is limited to frequent handling and fingering. Additionally, due to the claimant's problems with concentration caused by physical pain and treatment, he is limited to simple work with the additional limitations as outlined above.

> State agency medical consultant, Cynthia Eaton, M.D., opined that the claimant could perform light exertional level with postural and environmental limitations (Ex. 3A). Little weight is accorded this opinion, as the record supports a finding that the claimant is limited to sedentary work, as discussed herein.
>
> Based on the entire record, including the testimony of the claimant, I conclude that the evidence fails to support the claimant's assertions of total disability. Despite the evidence demonstrating that the claimant has suffered from medically determinable "severe" impairments, the evidence also establishes the claimant retains the capacity to function adequately to perform many basic activities associated with work. The above residual functional capacity assessment is supported by the objective medical evidence contained in the record. Treatment notes in the record do not sustain the claimant's allegations of disabling limitations. In sum, the claimant does experience some limitations, but only to the extent described in the residual functional capacity above.

R. 18–20.

In the joint memorandum, Claimant argues that the ALJ "did not offer a legally sufficient justification for rejecting Plaintiff's testimony about his pain." Doc. No. 20, at 9. On review, however, this is not a case where the ALJ wholesale rejected Claimant's subjective complaints of pain; instead the ALJ found the subjective complaints only partially credible in limiting Claimant to sedentary work. *See* R. 18–20. And upon consideration, the ALJ's reasons for finding Claimant's subjective complaints only partially credible are supported by substantial evidence.

As demonstrated by the above-quoted portions of the decision, the ALJ appeared to rely on three reasons for finding Claimant's subjective complaints of pain and other symptoms not fully persuasive: (1) the complaints were not fully substantiated by the objective medical evidence; (2) the complaints were inconsistent with Claimant's activities of daily living; and (3) no examiner provided an opinion that Claimant is unable to work or otherwise provided an RFC assessment. *See* R. 18–20.

Claimant first argues that the ALJ's consideration of the objective medical evidence failed to provide a sufficient basis for discounting his subjective complaints. Doc. No. 20, at 10.

Claimant contends that such evidence substantiates his claim of disability, rather than conflicting with it, and the ALJ failed to provide a sufficient explanation as to how the cited medical evidence was inconsistent with Claimant's testimony.  *Id.* at 11–12.  Claimant further contends that in such analysis, the ALJ did "not address . . . surgical recommendations at all."  *Id.* at 12–13.

Claimant's argument is unpersuasive.  As demonstrated above, the ALJ found that the objective medical evidence of record did not provide "strong support" for Claimant's allegations of disability, nor did the medical evidence support imposition of greater limitations in the RFC.  R. 19.  The ALJ compared and contrasted treatment notes from the relevant period, pointing out both evidence supporting Claimant's position and evidence to the contrary.  *See, e.g.*, R. 19–20 (noting Claimant's diagnoses, his limited range of motion, pain, and antalgic gait, but contrasting that with normal motor strength and negative straight leg raising test; contrasting MRI results, Claimant's pain with range of motion, with normal gait and station and muscles; comparing Claimant's allegations of pain and numbness in hands with electrodiagnostic testing results showing no evidence of neuropathy and only mild carpal tunnel syndrome).[6]  I find the ALJ's discussion sufficient to support the ALJ's decision to only partially credit Claimant's testimony and subjective complaints of total disability.  *See, e.g.*, *Markuske v. Comm'r of Soc. Sec.*, 572 F. App'x 762, 766–67 (11th Cir. 2014) (finding ALJ's discussion of objective medical evidence of record provided "adequate reasons" for ALJ's decision to partially discredit the claimant's subjective complaints of pain).[7]  As it relates to Claimant's contention that the ALJ failed to consider surgical

---

[6] In the joint memorandum, Claimant discusses several other medical records that he states support his subjective complaints.  Doc. No. 20, at 11–12.  However, "[u]nder a substantial evidence standard of review, [the Claimant] must do more than point to evidence in the record that supports [his] position; [he] must show the absence of substantial evidence supporting the ALJ's conclusion."  *See Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017).

[7] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority.  *See* 11th Cir. R. 36–2.

recommendations, in the decision, the ALJ expressly noted that surgery was recommended. *See* R. 19. Thus, Claimant's argument that the ALJ wholly failed to consider the recommendation is unavailing.

Claimant also argues that the ALJ erred in drawing a negative inference from Plaintiff's daily activities, essentially arguing that the activities identified by the ALJ (preparing simple meals, caring for children) are not necessarily inconsistent with disability. Doc. No. 20, at 13–14. Claimant is correct that participation in activities of daily living does not necessarily preclude a finding of disability. *See Lewis*, 125 F.3d at 1441. Nonetheless, Claimant has not explained how any of the specific activities of daily living listed by the ALJ "are inconsistent with the RFC and/or consistent with his alleged disabling symptoms." *See Bliven v. Comm'r of Soc. Sec.*, No. 6:13-cv-1150-Orl-18TBS, 2014 WL 4674201, at *9 (M.D. Fla. Sept. 18, 2014). In addition, the ALJ did not solely consider Claimant's activities of daily living in reaching the credibility determination. *See id.* (citation omitted) ("*Lewis* does not stand for the notion that an ALJ must never consider a claimant's daily activities, or that an ALJ's consideration of such activities warrants remand. The ALJ is meant to consider a claimant's daily activities in combination with other factors, as stated in 20 CFR § 404.1529(c)."). Accordingly, I find no error in the ALJ's consideration of Claimant's activities of daily living as one factor in the consideration regarding the credibility of Claimant's subjective complaints.

Claimant does not address the ALJ's third and final reason for finding Claimant's subjective complaints not fully persuasive: that no examiner provided an opinion that Claimant is unable to work or otherwise provided an RFC assessment. Accordingly, Claimant has waived any argument in that regard. *Cf. Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (refusing

- 10 -

to consider an argument that the claimant failed to raise before the district court).   Nonetheless, I note that courts have considered the lack of a medical opinion opining to greater limitations than found by the ALJ a relevant consideration.  *See, e.g.*, *Wolfe v. Colvin*, No. 8:12-cv-903-T-TGW, 2013 WL 3285358, at *3 (M.D. Fla. June 27, 2013).

In sum, the relevant inquiry is not whether there is evidence to support the Claimant's allegations, but whether there is substantial evidence to support the ALJ's credibility determination. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (alterations and citation omitted) ("Even if the evidence preponderates against the Commissioner's factual findings, the Court must affirm if the decision reached is supported by substantial evidence."); *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (when reviewing the ALJ's credibility determination "[t]he question is not . . . whether ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it.").

Because the ALJ provided adequate reasons for discounting Claimant's subjective complaints of pain, Claimant's first assignment of error is unpersuasive.  *See, e.g.*, *May v. Comm'r of Soc. Sec. Admin.*, 226 F. App'x 955, 958 (11th Cir. 2007) (finding ALJ provided sufficient reasoning to partially discredit the claimant's subjective complaints of pain when ALJ found that the claimant's symptoms were inconsistent with the objective evidence of record, as well as the claimant's activities of daily living).

  B. <u>Conflict Between VE Testimony and DOT</u>.

At step five of the sequential evaluation process, the Commissioner bears the burden of proving that other jobs exist in the national economy which, given the claimant's age, education, and RFC, he or she can perform despite her impairments.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).   The ALJ may consider "both jobs data drawn from the DOT as well as from

the testimony of the vocational expert ("VE") in making this determination." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1360 (11th Cir. 2018).

> Social Security Ruling 00-4p ("SSR 00-4p") provides, in pertinent part, as follows:
>
> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p, 2000 WL 1898704, at *2.[8] The Eleventh Circuit has held that the ALJ has a duty to resolve any apparent conflicts between a VE's testimony and the DOT, even if the VE does not affirmatively state that such a conflict exists. *See Washington*, 906 F.3d at 1356 (finding that pursuant to SSR 00-4p, "ALJs within the SSA have an affirmative duty to identify apparent conflicts between the testimony of a Vocational Expert and the DOT and resolve them. This duty requires more of the ALJ than simply asking the VE whether his testimony is consistent with the DOT."). A conflict is "apparent" if it is "reasonably ascertainable or evident" from a comparison of the VE's testimony and the DOT. *Id.* at 1365–66.

Here, in the decision, the ALJ included within the RFC determination that Claimant was limited to sedentary work with certain additional functional limitations, and that Claimant was further limited to simple, routine, and repetitive tasks. R. 18. In response to a hypothetical

---

[8] SSRs are binding on the SSA, but they are not binding on this Court. *See Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) ("Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration. Even though the rulings are not binding on us, we should nonetheless accord the rulings great respect and deference, if the underlying statute is unclear and the legislative history offers no guidance." (citing *B.B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981))).

question reflecting the same limitations, the VE testified that a person with those limitations could work as a call-out operator, an escort vehicle driver, or an addresser.  R. 69–70.[9]

According to the DOT, the job of call-out operator has a reasoning level of three, *see* DOT 237.367-014, *available at* 1991 WL 672186, while the jobs of escort vehicle driver and addresser have a reasoning level of two, *see* DOT 919.663-022 (escort-vehicle driver), *available at* 1991 WL 687886; DOT 209.587-010 (addresser), *available at* 1991 WL 671797.  Pursuant to the DOT, jobs with a reasoning level of three require an employee to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations."  *See* DOT Appendix C, *available at* 1991 WL 688702.  On the other hand, jobs with a reasoning level of two require an employee to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations."  *See id.*

Here, Claimant argues that there is either a direct or apparent conflict between the VE's testimony and the DOT, in that an individual limited to "simple" tasks would not be capable of carrying out jobs requiring an employee to carry out "detailed but uninvolved" instructions, *i.e.*, that limiting an individual to "simple" tasks is inconsistent with a reasoning level of two.  Doc. No. 20, at 21–22.  The Commissioner disagrees.  *Id.* at 26.  The crux of the parties' dispute centers on

---

[9] Notably, in posing hypothetical questions to the VE, the ALJ specifically asked the VE whether her testimony was consistent with the DOT.  R. 70.  The VE responded in the affirmative, with the exception of absences from work, which was contingent on her training, education, and experience.  *Id.*  The ALJ specifically asked the VE regarding the job of escort vehicle driver, and whether "that involves no more than occasional changes in the routine workplace setting."  *Id.*  The VE testified that "[p]er the DOT, it is a simple, routine, repetitive job" because the "duties would be the same, just the routes are what would change," and again confirmed as much when asked by the ALJ.  *Id.*

their respective interpretations of *Valdez v. Commissioner of Social Security*, 808 F. App'x 1005 (11th Cir. 2020).  In *Valdez*, the Court stated as follows:

> We haven't decided the issue Valdez raises here—whether a limitation to simple, routine, and repetitive work is inconsistent with a job that requires a reasoning level of three.  But it is unnecessary to decide it because, even if Valdez was not able to work as an order clerk, the ALJ still concluded that he could perform two other jobs: lens inserter, which has a reasoning level of one, *see* DOT, 713.687-026, and lens-block gauger, which has a reasoning level of two, *see id.* 716.687-030.  Valdez has not argued that these jobs are inconsistent with his residual functional capacity, *and they are not.*  Thus, any error pertaining to the ALJ's conclusion that he could work as an order clerk is harmless because *there are other jobs he is qualified to do even in light of his residual functional capacity, age, education, and work experience.*

*Valdez*, 808 F. App'x at 1009 (emphasis added).

The parties disagree over whether the Eleventh Circuit in *Valdez* held that jobs with a reasoning level of two are consistent with a limitation to "simple, routine, and repetitive tasks," or whether the discussion was mere dicta.  Doc. No. 20, at 20–32.

After issuance of *Valdez*, it appears that the majority of courts have found that *Valdez* stands for that proposition, although recognizing that *Valdez* is an unpublished opinion, and thus is persuasive "only insofar as [its] legal analysis warrants."  *See United States v. Rodriquez-Lopez*, 363 F.3d 1134, 1138 n.4 (11th Cir. 2004).  *See, e.g.*, *Hedges v. Comm'r of Soc. Sec.*, No. 2:19-cv-833-FtM-MAP, 2021 WL 1186836, at *6 (M.D. Fla. Mar. 30, 2021) ("As an unpublished decision, *Valdez* is not binding on this Court.  But since its issuance, the majority of courts in this circuit have relied on *Valdez* to bolster their findings that a reasoning level two job is not inconsistent with simple, routine, and repetitive work."); *Franasiak v. Comm'r of Soc. Sec. Admin.*, No. 3:19-cv-1378-J-MCR, 2021 WL 1050138, at *8 (M.D. Fla. Mar. 19, 2021) ("[T]his Court joins the current majority in holding there is not an apparent conflict each and every time a person limited to simple tasks is matched with DOT jobs classified with GED level 2 reasoning."); *James v. Comm'r of Soc. Sec.*, No. 2:19-cv-869-FtM-MRM, 2021 WL 973498, at *10 (M.D. Fla. Mar. 16, 2021) (finding the

Court in *Valdez* concluded that jobs with reasoning level of two are not inconsistent with a limitation to "simple, routine, and repetitive tasks," recognizing that *Valdez* is only persuasive authority as an unpublished opinion, but collecting authority and reading *Valdez* in conjunction with decisions from other circuits finding same); *Reyes v. Comm'r of Soc. Sec.*, No. 2:19-cv-866-FtM-JLB-NPM, 2021 WL 1085618, at *3 (M.D. Fla. Mar. 22, 2021) (overruling objection to magistrate's finding that no apparent conflict exists between limitation to simple, routine, and repetitive tasks and an occupation requiring level two reasoning); *Fletcher v. Saul*, No. 8:19-cv-1476-T-23AAS, 2020 WL 4188210, at *1 (M.D. Fla. July 21, 2020) (rejecting argument that the language in *Valdez* is dicta and concluding that no apparent conflict exists between a limitation to a "simple" task and a finding that the claimant can perform a job with a reasoning level of two); *see also Green v. Saul*, No. 8:19-cv-2021-T-TGW, 2020 WL 5743185, at *10 (M.D. Fla. Sept. 25, 2020) (relying on *Fletcher* for same). And recently, in another unpublished opinion specifically relying on *Valdez*, issued on July 27, 2021, the Eleventh Circuit again found that "there [is] no apparent conflict between an RFC limitation to simple, routine, repetitive tasks and the DOT's description of jobs requiring level two reasoning." *See Peterson v. Comm'r of Soc. Sec.*, No. 21-10086, 2021 WL 3163662, at *3 (11th Cir. July 27, 2021).

Upon consideration of the above-cited persuasive authority from this Circuit, as well as others, [10] and in the absence of binding precedent on this issue, the Court agrees with the Commissioner that no apparent conflict exists between the limitation to simple, routine, and repetitive tasks and an occupation requiring a reasoning level of two. Because two of the jobs

---

[10] *See Lawrence v. Saul*, 941 F.3d 140, 144 (4th Cir. 2019) (collecting cases and stating that "[i]n finding no apparent conflict between 'simple, routine, repetitive' and Level 2 reasoning, [it] join[ed] every other circuit to consider the issue").

identified by the VE have a reasoning level of two, the Court rejects Claimant's second assignment of error.

V. **CONCLUSION.**

Based on the foregoing, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is **DIRECTED** to enter judgment in favor of the Commissioner and **CLOSE** the case.

**DONE** and **ORDERED** in Orlando, Florida on August 2, 2021.

*[Signature]*

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record